UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

      - v. -                                    :          13 Cr. 410 (NRB)

                                      :

PAUL ORENA,
                                      :

            Defendant.
                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

                                      PREET BHARARA
                                      United States Attorney
                                            for the Southern District of New York,
                                    Attorney for the United States of America

JENNIFER E. BURNS
ABIGAIL S. KURLAND
Assistant United States Attorneys
      - Of Counsel -

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA           :

    - v. -                          :          13 Cr. 410 (NRB)

                                  :

PAUL ORENA,
                                  :
            Defendant.
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

The Government respectfully submits this sentencing memorandum in advance of the sentencing of Paul Orena ("Orena" or "defendant"), which is currently scheduled to take place on March 30, 2015, at 3:00 p.m.  The Government respectfully submits this letter in response to defense counsel's submission dated March 13, 2015 ("Def. Sub.").  The defendant seeks a non-incarceratory sentence (Def. Sub. at 1, 17), a sentence well below the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range set forth in the United States Probation Department's Presentence Investigation Report ("PSR")[1] and that stipulated to by the parties in the plea agreement. The Probation Department recommended a sentence of 24 months' imprisonment.  The Government respectfully requests that the Court impose a sentence within the Guidelines range of 24 to 30 months' imprisonment, which is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

---

[1] References herein are to the PSR dated December 23, 2014.

1

## BACKGROUND[2]

On April 4, 2013, the defendant was arrested and was ordered released on a personal recognizance bond. (PSR p. 2). On October 2, 2014, the defendant pleaded guilty before Your Honor to Count One of the Superseding Indictment which charged that defendant with engaging in a conspiracy to commit securities fraud from at least 2012 through on or about March 27, 2013. (PSR ¶ 1, 5).

Pursuant to the plea agreement, the parties stipulated to the following Guidelines calculations:

1. Count One:

    a. Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level for the offense is 6.

    b. Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), because the amount of loss was more than $120,000 but less than or equal to $200,000, the offense level is increased by 10 levels.

    c. Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(ii), because the offense was committed through mass marketing, the offense level is increased by 2 levels.

    d. Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), because the offense involved sophisticated means, the offense level is increased by 2 levels.

    e. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to

---

[2] In addition to the specific evidence referenced herein, the Government also relies on the offense conduct as set forth in the PSR, specifically paragraphs 12-49, as well as the defendant's allocution.

enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 17. (PSR ¶ 5).   The defendant admitted the forfeiture allegation.   (PSR ¶ 5(l)).

Based upon these calculations and pursuant to the plea agreement, the defendant's stipulated sentencing Guidelines range is 24 to 30 months' imprisonment (the "Stipulated Guidelines Range"). (PSR ¶5(i)).   The Probation Department reached the same result.   (PSR ¶ 125).   The parties agreed that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above was warranted and neither party would seek any departure or adjustment pursuant to the Guidelines. The parties further agreed that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

## DISCUSSION

For the reasons set forth below, a sentence within the Guidelines range of 24 – 30 months' imprisonment would be sufficient but not greater than necessary, to comply with the purposes of sentencing.

First, there is a need for specific deterrence.   The defendant's conduct was serious and if the scheme involving Face Up Entertainment Group (FUEG) had been more successful, his actions could have resulted in great harm to the public. The defendant, pursuant to his plea agreement, faces the lowest fraud amount attributed to any of the defendants in this case. (PSR ¶ 45).   This amount reflects the Government's view of his relative culpability in the FUEG scheme.   Orena was not a principal here but was directly involved in the efforts to execute this

pump and dump scheme.    While his role was limited in the FUEG scheme, his conduct with these co-conspirators was not limited to just FUEG.    Evidence obtained during the investigation, including bank records and Title III intercepts,[3] show that Orena was also involved in a scheme involving the stock of All Grade Mining, traded under the symbol HYII.  The stock was traded from May 7, 2012 through July 13, 2012, on the Over the Counter Bulletin Board (OTCBB).    Records from a bank account held in the name of PMT Group Marketing LLC, Orena's company (PSR ¶ 122),[4] show money being sent from this account to All Grade Mining and then received from the same.    Additionally, two checks totally nearly $9500 were deposited with notations that they reflect profits for sale of HYII stock.

The Government brings this evidence, which was produced in discovery, to the Court's attention not to seek to enhance the loss amount agreed to but to show that that the FUEG scheme was not Orena's only involvement in stock fraud with these co-conspirators.    Further, based on the defendant's involvement in both FUEG and HYII, it is reasonable to conclude that had law enforcement not shut down the activities of the defendant and his co-conspirators, the defendant would have continued to engage in stock fraud schemes.

In addition, his defiance of a fairly basic condition of his pretrial release – not to meet

---

3  These include calls with co-defendant Alex Puzaitzer in which the stock is referred to as "Hybrid" (Call # 331, Jan. 15, 2013; Call #1648, Mar. 6, 2013; Call # 1672, Mar. 6, 2013; Call #1817, Mar. 12, 2013).

4  The records for the PMT account also reflect significant sums being sent to and received from accounts held by co-conspirators, including Yitz Grossman.    While there are no notations in the account for these transfers which were in the thousands, they reflect a pattern of activity between Orena and his codefendants. For example, on August 20, 2012, Orena received a $100,000 wire from AREVIM INC. and a $25,000 wire from BFSF LLC, both entities controlled by Grossman.    On August 22, 2012, Orena wired $150,000 to WALL STREET RELATIONS, an investment relations firm, and again on August 27, 2012, wired $50,000 to WALL STREET RELATIONS. On October 17, 2012, Orena again received an $18,000 wire from BFSF LLC**.** These transfers were made in 2012, a time when Orena states that he was unemployed. (PSR ¶ 96).

with the very people with whom he engaged in this offense – demonstrates a lack of remorse and understanding of the consequences of his actions.   As noted in the defense submission (Def. Sub. at 12-14), the defendant repeatedly violated the condition of his release prohibiting him from having contact with his co-defendants outside of the presence of counsel. The Government is not seeking an obstruction enhancement, nor did it seek that the defendant's bail be revoked when it learned this information, but request that the Court consider the conduct as part of the Court's evaluation under Section 3353(a).   After his arrest in April 2013, on approximately 12 occasions, Orena participated in surreptitiously arranged meetings with two indicted co-defendants outside of the presence of counsel. The meetings were arranged either through an intermediary or with his co-defendants when they were present at a counsel meeting. Of particular significance is that that some of these meetings took place in a synagogue, a location chosen to avoid law enforcement.   On other occasions, Orena met with his two co-defendants at the Sloan Kettering Cancer treatment facility in Long Island.   Orena was familiar with the facility as his mother had been treated there previously, though she was not a patient at the time of the meetings.   During some of these meetings efforts were made, in Orena's presence, to have a codefendant testify falsely.   Orena did not participate in those discussions but was present when they took place. Counsel contends that "nothing untoward" came of these meetings and that should counsel in the defendant's favor.   (Def. Sub. at 13).   However, the results of these meetings and the failure of their efforts to obstruct justice are irrelevant. The contact was prohibited, clearly, in the terms of the defendant's bail conditions, and his repeated actions were intended to circumvent the law. That no false testimony was given by a co-defendant is simply fortuitous but in no way mitigates the deliberate actions of the defendant.   Even when new counsel was appointed in September 10, 2013, these meetings continued.   Orena's violation of

this condition evinces disrespect for the law, as well as a willingness to engage in risky behavior despite knowing that he was under the supervision of the Court and had a pending criminal case, that further warrants a significant sentence.

Despite having continued employment as a mortgage broker from 2002 until 2012 (PSR ¶¶ 98-108), the defendant chose illegal activity when facing a difficult time in his personal life. The defendant is a man with skills, abilities and who has benefitted from a strong network of support from his family and friends. Yet none of that deterred him from this crime. The defendant states that he committed this crime a "time of significant turbulence in his personal life, burdened by financial pressures." (Def. Sub. at 1).   At bottom, the defendant chose to engage in fraud for his own financial benefit, a common explanation but no justification. Such motivation particularly falls flat here where Orena maintained steady employment for a decade. (PSR ¶¶ 98-108).   His proven ability to support himself and his family only makes his decision to become involved in criminal activity more troubling.   The defendant could have chosen to continue to support his family through lawful employment using skills he acquired during his tenure in the mortgage industry, but instead chose the easier payday, perpetrating fraud in the stock market taking what he could from these schemes.

From a categorical perspective, the Guidelines range that applies in this case reflects the considered judgment of the Sentencing Commission, after examining "tens of thousands of sentences and work[ing] with the help of many others in the law enforcement community over a long period of time" in an effort to fulfill the same objectives set out in Section 3553(a). *Rita* v. *United States*, 541 U.S. 338, 349 (2007).   The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," and accordingly, the guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."   *Id.*

The defendant seeks a sentence well below the Stipulated Guidelines Range, in part based on his family's needs which are indisputably relevant considerations.[5]  However, his conduct was serious and undertaken with full knowledge of the consequences. A sentence within the Stipulated Guidelines Range will serve the purpose of specific deterrence, forcing the defendant to contemplate illegal conduct more seriously in the future.   Such a sentence will also deter others contemplating illegal stock schemes.

## CONCLUSION

The Government respectfully submits that a sentence within the Guidelines range of 24 to 30 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Dated: New York, New York
       March 23, 2015

                          Respectfully submitted,

                          PREET BHARARA
                          United States Attorney for the
                          Southern District of New York
                          Attorney for the United States
                                of America

By:   _/s/ Jennifer E. Burns_____
       JENNIFER E. BURNS
       ABIGAIL KURLAND
       Assistant United States Attorneys
       (212) 637-2315/2955

---

[5] The Government has asked the Bureau of Prisons about its ability to address the defendant's health concerns (Def. Sub. at 16) and will provide any information it obtains promptly to the Court and counsel.

7